**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TRAVIS PETERS, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| ODDITY TECH LTD., ORAN HOLTZMAN, and LINDSAY DRUCKER MANN, | |
| Defendants. | |

Plaintiff Travis Peters ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding ODDITY Tech Ltd. ("Oddity" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Oddity securities between February 26, 2025 and February 24, 2026, both dates inclusive (the "Class Period"), seeking to

recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.    Oddity is a consumer technology company that builds digital-first brands for the beauty and wellness industries in the U.S. and internationally.  The Company serves consumers through its purported artificial intelligence- ("AI") driven online platform, using data science, machine learning, and computer vision capabilities to identify consumer needs and develop solutions in the form of beauty, wellness, and technology products.

3.    Oddity relies heavily on advertising partners to support its sales growth.  As such, the Company's revenue and customer acquisition costs are directly impacted by its advertising partners' algorithms, which utilize user behavior, demographic, and interest-related data to facilitate the Company's exposure to online advertising spaces via auctions ("ad auctions") and, accordingly, online consumer traffic.

4.    The quality of a company's ad auction generally correlates favorably with a company's customer acquisition costs.  A high-quality ad auction will generally result in potential customers seeing more relevant, engaging and prominently placed ads, resulting in lower costs per click ("CPC") and higher click-through ("CT") rates.  Conversely, lower-quality ad auctions will yield less relevant and poorly placed ads, leading to higher CPC and lower CT rates.  As such, higher-quality ad auctions tend to result in lower customer acquisition costs, whereas lower-quality ad auctions tend to increase customer acquisition costs.

5.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) due to an algorithm

change by Oddity's largest advertising partner, Oddity's advertisements were being diverted to lower quality auctions at abnormally high costs; (ii) the foregoing significantly increased Oddity's customer acquisition costs, thereby negatively impacting Oddity's business and financial prospects; (iii) accordingly, Defendants overstated the overall strength, stability, and sustainability of Oddity's digital operating model and/or market position; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

6.     The truth began to emerge on February 25, 2026, when Oddity issued a press release "announc[ing] its financial results for the fourth quarter and full year ended December 31, 2025."  In the press release, Oddity's Chief Executive Officer ("CEO"), Defendant Oran Holtzman ("Holtzman"), said that "we experienced a dislocation in our account with our largest advertising partner that we believe was driven by algorithm changes which diverted us to lower quality auctions at abnormally high costs", which "result[ed] in significant increases in new user acquisition costs that are not correlated with the market or our historical experience."

7.     In the same press release, Oddity's Global Chief Financial Officer ("CFO"), Defendant Lindsay Drucker Mann ("Mann"), said that:

> Given the dislocation we are experiencing in acquisition costs, ***we expect first quarter 2026 revenue to decline approximately 30% year-over-year***, but we hope to see material improvement in the second half of 2026.  We plan to issue our financial outlook for FY 2026 in the next few months when we have more visibility.[1]

8.     On this news, Oddity's Class A ordinary share price fell $14.28 per share, or 49.21%, to close at $14.74 per share on February 25, 2026.

---

[1]      Unless otherwise noted, all emphases herein are added.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

12.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Oddity's Class A ordinary shares trade in the U.S. on the Nasdaq Global Market ("NASDAQ"), which is located in this District.

13.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired Oddity securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant Oddity is organized under the laws of Israel with principal executive offices located at 8 HaHarash Street, Tel Aviv-Jaffa, 6761304, Israel.  The Company's Class A ordinary shares trade in an efficient market on the NASDAQ under the ticker symbol "ODD".

16.    Defendant Holtzman has served as Oddity's CEO at all relevant times.  Defendant Holtzman is also one of the Company's co-founders.

17.    Defendant Mann has served as Oddity's Global CFO at all relevant times.

18.    Defendants Holtzman and Mann are collectively referred to herein as the "Individual Defendants".

19.    The Individual Defendants possessed the power and authority to control the contents of Oddity's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Oddity's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Oddity, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

20.    Oddity and the Individual Defendants are collectively referred to herein as "Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

21.    Oddity is a consumer technology company that builds digital-first brands for the beauty and wellness industries in the U.S. and internationally.  The Company serves consumers through its purported AI-driven online platform, using data science, machine learning, and

computer vision capabilities to identify consumer needs and develop solutions in the form of beauty, wellness, and technology products.

22.    Oddity relies heavily on advertising partners to support its sales growth.  As such, the Company's revenue and customer acquisition costs are directly impacted by its advertising partners' algorithms, which utilize user behavior, demographic, and interest-related data to facilitate the Company's exposure to online advertising spaces via ad auctions and, accordingly, online consumer traffic.

23.    The quality of a company's ad auctions generally correlates favorably with customer acquisition costs.  A high-quality ad auction will generally result in potential customers seeing more relevant, engaging and prominently placed ads, resulting in lower CPC and higher CT rates.  Conversely, lower-quality ad auctions will yield less relevant and poorly placed ads, leading to higher CPC and lower CT rates.  As such, higher-quality ad auctions tend to result in lower customer acquisition costs, whereas lower-quality ad auctions tend to increase customer acquisition costs.

### Materially False and Misleading Statements Issued During the Class Period

24.    The Class Period begins on February 26, 2025.  On February 25, 2025, during post-market hours, Oddity issued a press release reporting its financial results for the fourth quarter and full year of 2024.  The press release quoted Defendant Holtzman as stating, in relevant part:

> We once again proved the power of online. The strength of our direct-to-consumer model really stands out in this backdrop where others talk about weaker sales and excess inventory, yet we delivered net revenue growth of 27% for the year at a 23.3% adjusted EBITDA margin and with excellent free cash generation.[]

> []I remain bullish on ODDITY's future. We have positioned ourselves to win in the most important growth areas in our industry, including the consumer shift online and their increased demand for high performance products . . . . Our brands today continue to deliver strong and profitable growth[.]

25.     The same day, also during post-market hours, Oddity filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operating results for its fourth quarter and year ended December 31, 2024 (the "2024 Annual Report"). The 2024 Annual Report stated, *inter alia*:

> Our business has a powerful and rare combination of scale, growth, and profitability. Since our launch, we have proven our ability to quickly achieve success in new brands, products, categories and international markets. In just 18 months following our U.S. launch in 2018, and simultaneous with our rapid revenue growth, we achieved profitability due to strong repeat rates. During the year ended December 31, 2024, we scaled to $647 million of net revenue, compared to $509 million and $325 million for the years ended December 31, 2023 and 2022, respectively. In addition, for the years ended December 31, 2024, 2023 and 2022, we achieved a net income margin of 15.7%, 11.5%, and 6.7%, and Adjusted EBITDA margin of 23.3%, 21.1%, and 12.2%, respectively . . . .

> Our asset light model supports significant cash generation. During the year ended December 31, 2024, we generated $137.8 million of net operating cash flow compared to $87.5 million and $39.0 million for the years ended December 31, 2023, and 2022 . . . .

> We intend to sustain our high-growth and attractive margin profile that consistently delivers great outcomes for our stakeholders. To do this, we maintain a long-term growth strategy that guides our continued investments that support profitable growth and market share gains within a large and attractive global beauty and wellness market. These include growing our user base, converting users into customers, increasing customer loyalty and share of wallet, expanding our global footprint, growing our existing brands, and expanding our portfolio of brands and services.

26.     Appended to the 2024 Annual Report were signed certifications, pursuant to the Sarbanes-Oxley Act of 2002, by the Individual Defendants, in which each Individual Defendant attested that "this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]"

27.     On April 29, 2025, Oddity issued a press release reporting its financial results for the first quarter of 2025. The press release quoted Defendant Holtzman as stating:

Our Q125 results exceeded our expectations across all metrics and allow us to raise our full year outlook. We delivered an outstanding result for our biggest quarter of the year, setting us up to overdeliver on our financial algorithm in 2025 . . . . The beauty industry continues to transform, as we said it would, with consumers moving online and towards high performance products, in our view. The structural changes in the industry, including the growth of online, are only strengthening as the store model is less suited for the current environment. It only makes our opportunity bigger.

[]Our early and aggressive investments in this transformation allow us to sustain a powerful financial model, to beat our guidance, and to once again raise our full year outlook as we have done in the past 8 quarters since our IPO . . . . Our DNA, business model, and strong performance allow us to play full offense in times like today.

28.     For the quarter, Oddity reported approximately $158.183 million in selling, general and administrative costs (which included the Company's advertising spending), compared to $117.125 million for the same period in the prior year.

29.     The press release also quoted Defendant Mann as stating:

We are pleased with our financial results for the first quarter, which beat our guidance across revenue, gross margin, adjusted EBITDA, and adjusted EPS[.] . . . These excellent Q125 results, combined with a strong start to Q2, our sustained high repeat rates, the resilience of our category, and our agile business model allow us to continue investing in our growth while raising our full year outlook.

30.     Accordingly, the press release stated:

ODDITY is raising its guidance across all metrics for the full year ending December 31, 2025:

- Net revenue between $790 million and $798 million, representing year-over-year growth between 22% and 23%.
- Gross margin of approximately 71%.
- Adjusted EBITDA between $157 million and $161 million.
- Adjusted diluted EPS between $1.99 and $2.04. This assumes an effective tax rate of approximately 20%.

31.     On August 4, 2025, Oddity issued a press release reporting its financial results for the second quarter of 2025.   The press release quoted Defendant Holtzman as touting the Company's financial and operating results, stating that "momentum continued into the second

quarter with yet another beat and raise across revenue, profit, and earnings per share" and that "[o]ur business is growing with high profitability, multiple engines, and long runways[.]" Holtzman said that "[t]hese strong financials allow us to continue reinvesting in our future, including technology, ODDITY Labs, and building new brands".

32.     For the quarter, Oddity reported approximately $117.258 million in selling, general and administrative costs, compared to $86.055 million for the same period in the prior year.

33.     In the same vein, the press release quoted Defendant Mann as stating:

We are pleased with our financial results for the second quarter, which beat our guidance on revenue, gross margin, adjusted EBITDA, and adjusted EPS. The third quarter is also off to a strong start[.] . . . The remainder of our year is driven mostly by a high visibility backlog of repeat orders. These factors altogether give us confidence to once again raise our full year outlook.

34.     Accordingly, the press release stated:

ODDITY is raising its financial outlook for the full year ending December 31, 2025:

- Net revenue between $799 million and $804 million, representing year-over-year growth between 23% and 24%.
- Gross margin of approximately 71%.
- Adjusted EBITDA between $160 million and $162 million.
- Adjusted diluted EPS between $2.06 and $2.09. This assumes an effective tax rate of approximately 19%.

35.     On November 19, 2025, Oddity issued a press release reporting its financial results for the third quarter of 2025. As in the previous two quarters, the press release trumpeted the Company's purportedly strong quarterly performance and near-term prospects, quoting Defendants Holtzman as stating that "ODDITY delivered strong third quarter results, including financial performance that once again exceeded our guidance across revenue, profit, and earnings per share" and describing the Company as "well positioned for a strong finish in 2025 with multiple

engines to drive future growth, and we continue to invest in new brands, ODDITY Labs, and tech innovation."

36.    For the quarter, Oddity reported approximately $88.526 million in selling, general, and administrative costs, compared to $63.698 million for the same period in 2024.

37.    Similarly, the press release quoted Defendant Mann as stating:

We are pleased with our financial results for the third quarter, which beat our guidance on revenue, gross margin, adjusted EBITDA, and adjusted EPS[.] . . . Our solid start to the fourth quarter gives us confidence to once again raise our full year outlook.

38.    Once again, Oddity raised its financial outlook for the year accordingly:

- Net revenue between $806 million and $809 million, representing year-over-year growth between 24% and 25%.
- Gross margin of approximately 72.5%.
- Adjusted EBITDA between $161 million and $163 million.
- Adjusted diluted EPS between $2.10 and $2.12. This assumes an effective tax rate of approximately 20%.

39.    The statements referenced in ¶¶ 24-38 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) due to an algorithm change by Oddity's largest advertising partner, Oddity's advertisements were being diverted to lower quality auctions at abnormally high costs; (ii) the foregoing significantly increased Oddity's customer acquisition costs, thereby negatively impacting Oddity's business and financial prospects; (iii) accordingly, Defendants overstated the overall strength, stability, and sustainability of Oddity's digital operating model and/or market position; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

40.    In addition, Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required Oddity to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  Defendants' failure to disclose, *inter alia*, that Oddity was spending increasingly more money on lower quality advertising auctions, which in turn massively increased Oddity's customer acquisition costs, violated Item 303 because these issues represented known trends or uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

### The Truth Begins to Emerge

41.    The truth began to emerge on February 25, 2026, when Oddity issued a press release "announc[ing] its financial results for the fourth quarter and full year ended December 31, 2025."  In the press release, Defendant Holtzman stated that "we experienced a dislocation in our account with our largest advertising partner that we believe was driven by algorithm changes which diverted us to lower quality auctions at abnormally high costs", which "result[ed] in significant increases in new user acquisition costs that are not correlated with the market or our historical experience."

42.    In the same press release, Defendant Mann said that:

> Given the dislocation we are experiencing in acquisition costs, **we expect first quarter 2026 revenue to decline approximately 30% year-over-year**, but we hope to see material improvement in the second half of 2026.  We plan to issue our financial outlook for FY 2026 in the next few months when we have more visibility.

43.    On a related earnings call, referring to the algorithm changes, an analyst asked Oddity's officers: "When did the issue actually start?  When did you start seeing it?"  In response, Defendant Mann represented only that the Company had purportedly "**observed** that something

was different in the second half of 2025" – that is, without acknowledging when the issue had actually started.

44.    On this news, Oddity's Class A ordinary share price fell $14.28 per share, or 49.21%, to close at $14.74 per share on February 25, 2026.

45.    Market analysts were quick to react to Oddity's disclosures.  Following the Company's earnings announcement, Bank of America, JPMorgan Chase, Barclays, Evercore ISI, Needham, Truist, Jefferies, and Citizens all downgraded Oddity, citing concerns about Oddity's dependence on advertising partners, visibility on the Company's growth, and the potential duration of higher customer acquisition costs.

46.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

47.    During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

48.    Defendants also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  Indeed, as Defendants Holtzman acknowledged on Oddity's February 25, 2026 earnings call, Oddity "observed" the algorithm changes and/or the consequences for the quality of the Company's ad

auctions and customer acquisition costs at some point in the second half of 2025. Moreover, considering the extent of Oddity's reliance on advertising partners to support its sales growth, the Company's leadership plainly would have been highly attentive to any and all issues impacting the quality of its ad auctions, and thus its customer acquisition costs, including any dislocations or algorithm changes involving its single largest advertising partner.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

49.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Oddity securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

50.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Oddity securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Oddity or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

51.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

52.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

53.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Oddity;

- whether the Individual Defendants caused Oddity to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Oddity securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

54.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

55.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Oddity securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Oddity securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

56.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

57.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

58.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

60. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Oddity securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Oddity securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

61. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Oddity securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Oddity's finances and business prospects.

62. By virtue of their positions at Oddity, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended

thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

63.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Oddity, the Individual Defendants had knowledge of the details of Oddity's internal affairs.

64.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Oddity. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Oddity's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Oddity securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Oddity's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Oddity securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

65.     During the Class Period, Oddity securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Oddity securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Oddity securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Oddity securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

66.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## <u>COUNT II</u>

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

68.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69.     During the Class Period, the Individual Defendants participated in the operation and management of Oddity, and conducted and participated, directly and indirectly, in the conduct of Oddity's business affairs.  Because of their senior positions, they knew the adverse non-public information about Oddity's finances and operations.

70.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Oddity's financial condition and results of operations, and to correct promptly any public statements issued by Oddity which had become materially false or misleading.

71.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Oddity disseminated in the marketplace during the Class Period concerning Oddity's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Oddity to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Oddity within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Oddity securities.

72.     Each of the Individual Defendants, therefore, acted as a controlling person of Oddity.  By reason of their senior management positions and/or being directors of Oddity, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Oddity to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Oddity and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

73.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Oddity.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: March 12, 2026

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*