UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRAVIS PETERS, *individually and on behalf of all others similarly situated,*

                                            Plaintiff,

                         -v-

ODDITY TECH LTD. *et al.,*

                                            Defendants.

26 Civ. 2046 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This putative class action brings claims of securities fraud by the company ODDITY Tech Ltd. ("Oddity") and two of its executives.  Movants Clal Pension and Provident Ltd., Clal Insurance Company Ltd., and Atudot Pension Fund for Employees & Independent Workers Ltd. (collectively, "Clal"), and The Phoenix Insurance Company Ltd. and The Phoenix Provident Pension Fund Ltd. (collectively, "Phoenix") now move to be appointed co-lead plaintiffs.  They also move for appointment of Pomerantz LLP ("Pomerantz") as lead counsel.  The motions are unopposed.

For the following reasons, the Court appoints (1) Clal and Phoenix as co-lead plaintiffs and (2) Pomerantz as lead counsel.

## I.        Background

### A.        Overview of the Complaint

On March 12, 2026, plaintiff Travis Peters filed this lawsuit against Oddity, its chief executive officer Oran Holtzman, and its global chief financial officer Lindsay Drucker Mann. Dkt. 1 ("Complaint") ¶¶ 15–17.  The putative class consists of persons and entities that

purchased or otherwise acquired Oddity securities between February 26, 2025, and February 24, 2026, inclusive (the "class period"). *Id.* ¶ 1.

Oddity is a consumer technology company that builds "digital-first brands" in the beauty and wellness industries in the United States and internationally. *Id.* ¶ 2. It relies on digital advertising partners to support its sales. *Id.* ¶ 22. Its revenue is thus affected by those partners' algorithms, which expose Oddity to potential consumers via advertisement ("ad") auctions. *Id.* A "high-quality" ad auction generally results in potential consumers seeing "more relevant, engaging and prominently placed ads," which, in turn, results in greater user engagement and lower customer acquisition costs. *Id.* ¶ 23.

The Complaint alleges that, during the class period, Oddity misled investors as to the company's operations and market position. The Complaint further alleges that Oddity failed to disclose that, because of an algorithm change by its largest advertising partner, Oddity's ads were being diverted to lower quality auctions at unusually high costs, which increased Oddity's customer acquisition costs and hurt Oddity's business. *Id.* ¶ 39.

The Complaint alleges that this omission made Oddity's positive public statements about its strength and sustainability false or misleading. *Id.* These included statements in a series of press releases reporting quarterly financial results in 2024 and 2025. For example, in a February 25, 2025 press release, CEO Holtzman stated: "The strength of our direct-to-consumer model really stands out. . . . We have positioned ourselves to win in the most important growth areas in our industry, including the consumer shift online." *Id.* ¶ 24. In an April 29, 2025 press release, Holtzman stated: "We delivered an outstanding result for our biggest quarter of the year, setting us up to overdeliver on our financial algorithm in 2025." *Id.* ¶ 27. In an August 4, 2025 press release, he stated that "momentum continued into the second quarter with yet another beat

2

and raise across revenue, profit, and earnings per share," and that "[o]ur business is growing with high profitability, multiple engines, and long runways." *Id.* ¶ 31.  And in a November 19, 2025 press release, he stated that Oddity "delivered strong third quarter results, including financial performance that once again exceeded our guidance across revenue, profit, and earnings per share," and described Oddity as "well positioned for a strong finish in 2025 with multiple engines to drive future growth." *Id.* ¶ 35.

The Complaint further alleges that, on February 25, 2026, Oddity issued a press release announcing its fourth quarter and full-year results from 2025, which revealed Oddity's financial problems. *Id.* ¶ 41.  The press release disclosed "significant increases in new user acquisition costs" because of "dislocation in our account with our largest advertising partner that we believe was driven by algorithm changes which diverted us to lower quality auctions at abnormally high costs." *Id.*  It quoted Mann as forecasting revenue in the first quarter of 2026 to decline by approximately 30% year over year. *Id.* ¶ 42.

In response, Oddity's Class A ordinary share price fell by $14.28 per share. *Id.* ¶ 44.

## B.    Procedural History

On March 12, 2026, the day the Complaint was filed, Pomerantz published notice of the lawsuit.  Dkt. 15, Ex. B.  As required by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(A), the notice summarized the bases for the action and notified members of the putative class that they had 60 days to move for appointment as lead plaintiff. *Id.*

On May 11, 2026, Clal and Phoenix moved for appointment as co-lead plaintiffs and approval of their chosen counsel, Pomerantz. Dkts. 12, 14 ("Mot."). Clal and Phoenix are the only parties that presently seek appointment as lead plaintiffs.[1]

## II.    Appointment of Lead Plaintiff

The PSLRA governs motions for appointment of lead plaintiff and approval of lead counsel in putative class actions under federal securities laws. It directs the Court to appoint as lead plaintiff the party or parties "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

Under the PSLRA, there is a rebuttable presumption that the "most adequate plaintiff" is the person who: (1) has either "filed the complaint or made a motion in response to a notice," *id* § 78u-4(a)(3)(B)(iii)(I)(aa); (2) has the "largest financial interest in the relief sought by the class," *id.* § 78u-4(a)(3)(B)(iii)(I)(bb); and (3) "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure," *id.* § 78u-4(a)(3)(B)(iii)(I)(cc). "[T]his presumption may be rebutted 'only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff'" either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Metro Servs. Inc. v. Wiggins*, 158 F.3d 162, 164 (2d Cir. 1998) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). The Court has discretion to appoint more than one lead plaintiff where a co-lead plaintiff structure "best serves the interests of the proposed class given the circumstances of the particular case." *In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp.

---

[1] The initial plaintiff, Peters, did not so move. On May 11, 2026, Paolo Barbon moved for appointment as lead plaintiff and approval of his chosen counsel. Dkts. 10–11. However, on May 26, 2026, Barbon filed a notice of non-opposition to Clal and Phoenix's motion, acknowledging that Barbon "does not appear to have the largest financial interest in this litigation." Dkt. 19 at 2.

4

3d 563, 570 (S.D.N.Y. 2015) (cleaned up); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 47 (S.D.N.Y. 1998) ("*Oxford Health Plans*") ("the PSLRA expressly contemplates the appointment of more than one lead plaintiff").

Clal and Phoenix timely moved for appointment in response to a notice, satisfying the PSLRA's first prong. The Court therefore turns to the statute's other requirements.

### A.    Financial Interest

In determining which prospective plaintiff has the largest financial interest in the outcome of the litigation, courts focus on the magnitude of the loss suffered. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011). In assessing the financial interest of prospective co-lead plaintiffs, courts may aggregate their losses. *See e.g.*, *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004); *Oxford Health Plans,* 182 F.R.D. at 49.

Clal and Phoenix certify that, during the class period, they incurred an aggregate loss of approximately $27,980,077, calculated on a first-in, first-out basis, or $26,605,488, calculated on a last-in, first-out basis. Mot. at 1–2. Because a prospective lead plaintiff with a larger financial interest has not come forward, and because the movants' financial stake is more than substantial enough to incent them to fulfill the obligations of a lead plaintiff, the Court finds them suitable co-lead plaintiffs. *See, e.g.*, *In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d at 570–71 (appointing as co-lead plaintiffs institutional investors whose aggregate losses were "clearly substantial"); *Gordon v. Sonar Cap. Mgmt. LLC*, No. 11 Civ. 9665, 2012 WL 1193844, at *2 (S.D.N.Y. Apr. 9, 2012) (same as to two individual investors who collectively had "largest financial stake").

**B.    Rule 23 Requirements**

Rule 23's requirements for class certification are commonly referred to as numerosity, commonality, typicality, and adequacy. *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015).

At this early stage of litigation, however, "only the last two factors—typicality and adequacy—are pertinent." *Lopez v. CTPartners Exec. Search Inc.*, No. 15 Civ. 1476 (PAE), 2015 WL 2431484, at *2 (S.D.N.Y. May 18, 2015) (quoting *Constance Sczesny Tr.*, 223 F.R.D. at 324). A lead plaintiff's claims are typical where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173–74 (S.D.N.Y. 2010) (citation omitted); *see also In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). A lead plaintiff is adequate where it "does not have interests that are antagonistic to the class that [it] seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that [it] seeks to represent." *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y. 2006) (citing *Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000)). To obtain appointment as lead plaintiff, "[t]he moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *see Oxford Health Plans*, 182 F.R.D. at 49–50 (same as to appointment of co-lead plaintiffs).

Clal and Phoenix's claims "are typical of the class because their claims and injuries arise from the same conduct from which the other class members' claims and injuries arise." *Oxford Health Plans*, 182 F.R.D. at 50 (citing *Drexel*, 960 F.2d at 291). As alleged, every member of

the putative class "(1) purchased or acquired [Oddity] securities during the class period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when the truth was disclosed to the market." *Jolly Roger Offshore Fund LTD v. BKF Cap. Grp., Inc.*, No. 7 Civ. 3923, 2007 WL 2363610, at *4 (S.D.N.Y. Aug. 16, 2007). Accordingly, Clal and Phoenix's claims, and those of the putative class members, arise from the same course of conduct.

On the facts presently known, Clal and Phoenix are also adequate class representatives. Both are institutional investors. *See Glauser,* 236 F.R.D. at 188 (the PSLRA aimed "to increase the likelihood that institutional investors would serve as lead plaintiffs" (citation omitted)). Both have expressed a willingness to vigorously pursue their claims and protect the interests of the putative class. Mot. at 11; Dkt. 15, Ex. C. They have certified that they are willing to fulfill the duties of co-lead plaintiffs, Dkt. 15, Ex. D, and retained counsel with substantial experience in securities class action cases, *id.,* Ex. E. And there is, as yet, no indication that they have interests antagonistic to those of the class. *See Jolly Roger*, 2007 WL 2363610, at *5. Because Clal and Phoenix have thus far satisfied all PSLRA requirements, the Court finds them the most adequate lead plaintiffs. There is no credible basis to conclude that they "will not fairly and adequately protect the interests of the class" or are subject to "unique defenses" that render them incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Accordingly, the Court appoints Clal and Phoenix as co-lead plaintiffs.

## III.    Appointment of Class Counsel

The most adequate lead plaintiffs may retain counsel to represent the class, subject to the Court's approval. "There is a 'strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection.'" *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265,

278 (S.D.N.Y. 2015) (quoting *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 3 MDL 1529, 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008)). Here, Clal and Phoenix have selected Pomerantz. Having reviewed that firm's submissions as to its pertinent background and experience, including its experience litigating securities class actions, *see* Dkt. 15, Ex. E, the Court finds Pomerantz well qualified to serve as lead counsel.

The Court therefore appoints Pomerantz lead counsel.

### CONCLUSION

For the foregoing reasons, the Court appoints (1) Clal and Phoenix as co-lead plaintiffs and (2) Pomerantz as lead counsel. The above-captioned action shall proceed under the caption *In re Oddity Securities Litigation*, 26 Civ. 2046 (PAE).

Consistent with the parties' joint scheduling stipulation, Dkt. 16, counsel are directed, within **14 days of this decision**, to submit a stipulation proposing a schedule for the filing of a consolidated or amended complaint.

The Clerk of Court is respectfully directed to terminate all pending motions.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: June 29, 2026
        New York, New York

8